**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FORTRESS INVESTMENT GROUP LLC,

        Movant,

v.

SCHNEIDER ELECTRIC SE; SCHNEIDER
ELECTRIC USA, INC.,

        Respondents.

Miscellaneous No. 1:26-mc-00156

Underlying Litigation:

*Data PowerWorks, LLC v. Schneider Electric SE and Schneider Electric USA, Inc.*, Case No. 2:25-cv-00300-JRG (E.D. Tex.)

**MEMORANDUM IN SUPPORT OF**
**FORTRESS INVESTMENT GROUP LLC'S**
**MOTION TO QUASH SCHNEIDER'S SUBPOENA**

**TABLE OF CONTENTS**

**Page**

I.    Introduction ...............................................................................................................................1

II.   Factual Background .....................................................................................................................2

III.  Legal Standard ............................................................................................................................4

IV.   Argument ....................................................................................................................................6

    A.    This Court Has Jurisdiction to Quash Schneider's Subpoena .................................6

    B.    Schneider's Subpoena Must be Quashed because It Fails to Comply with Rule 45(c)'s Geographical Limitations by Requiring Compliance More Than 1,500 Miles Away ...............................................................................................................8

    C.    The Subpoena Is Facially Overbroad and Would Render a Response by Fortress Unduly Burdensome in Violation of Rule 45(d) .....................................10

V.    Conclusion ................................................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Benitez v. Lopez*,
No. 17-cv-3827, 2019 WL 1578167 (E.D.N.Y. Mar. 14, 2019) .............................................. 15

*Blackrock Allocation Target Shares v. Wells Fargo Bank*,
No. 14-cv-09371 (KPF)(SN), 2017 U.S. Dist. LEXIS 223388 (S.D.N.Y. Mar. 2, 2017) .... 6, 12

*Bruce Kirby, Inc. v. Laserperformance Europe Ltd.*,
No. 3:13-cv-297 (JAM), 2022 U.S. Dist. LEXIS 246044 (D. Conn. Apr. 4, 2022)................. 13

*Ceats, Inc. v. Cont'l Airlines, Inc.*,
No. 6:10-cv-120, 2012 WL 12903706 (E.D. Tex. Jan. 5, 2012) .............................................. 14

*Concord Boat Corp. v. Brunswick Corp.*,
169 F.R.D. 44 (S.D.N.Y. 1996) ...................................................................................................... 6

*Dellaportas v. Shahin*,
No. 24-CV-793 (VM) (VF), 2025 U.S. Dist. LEXIS 234292 (S.D.N.Y. Dec. 2, 2025) ............ 7

*Europlay Capital Advisors, LLC v. Does*,
323 F.R.D. 628 (C.D. Cal. 2018)..................................................................................................... 7

*Fleet Connect Sols. LLC v. Waste Connections US, Inc.*,
No. 2:21-cv-00365-JRG, 2022 WL 2805132 (E.D. Tex. June 29, 2022)................................. 14

*Greater Chautauqua Fed. Credit Union v. Quattrone*,
No. 22-CV-2753, 2024 U.S. Dist. LEXIS 2230 (S.D.N.Y. Jan. 3, 2024) ............................. 4, 7

*Great Lakes Reinsurance (UK) SE v. Herzig*,
No. 16 Civ. 9848 (PGG), 2023 U.S. Dist. LEXIS 116721 (S.D.N.Y. July 7, 2023).......... 12, 13

*Gropper v. David Ellis Real Estate, L.P.*,
No. 13 Civ. 2068 (ALC) (JCF), 2014 WL 518234 (S.D.N.Y. Feb. 10, 2014) ......................... 15

*Hanwha Q Cells USA Corp. v. FCX Solar, LLC*,
No. 3:22-CV-00241-LRH-CLB, 2022 U.S. Dist. LEXIS 125554
(D. Nev. July 15, 2022)................................................................................................................... 8

*Hedgeye Risk Mgmt., LLC v. Dale*, No. 21-CV-3687 (ALC) (RWL),
2023 U.S. Dist. LEXIS 116323 (S.D.N.Y. July 5, 2023) ........................................................ 11

*Henry v. Morgan's Hotel Grp., Inc.*,
No. 15-CV-1789 (ER) (JLC), 2016 WL 303114 (S.D.N.Y. Jan. 25, 2016) ............................. 15

*Hermitage Global Partners L.P. v. Prevezon Holdings Ltd.*,
  No. 14-mc-00318 (TPG), 2015 U.S. Dist. LEXIS 20080 (S.D.N.Y. Feb. 19, 2015) ........... 8, 10

*Hi.Q, Inc. v. Zeetogroup, LLC*,
  No. 22-cv-1440-LL-MDD, 2022 U.S. Dist. LEXIS 215133 (S.D. Cal. Nov. 29, 2022) ............ 7

*Highmore Fin. Co. I LLC v. Greig Cos*,
  2023 U.S. Dist. LEXIS 97606 ...................................................................... 9, 10, 11

*In re 650 Fifth Ave. & Related Props.*,
  No. 08 Civ. 10934, 2013 WL 12335763 (S.D.N.Y. Aug. 29, 2013) ......................................... 5

*In re Biovail Corp. Secs. Litig.*,
  No. 03-cv-8917 (RO), 2007 U.S. Dist. LEXIS 91127 (S.D.N.Y. Nov. 30, 2007) .................... 6

*In re in re T-Systems Scheiz AG*,
  No. 1:20-mc-308-GHW, 2020 U.S. Dist. LEXIS 236643 (S.D.N.Y. Dec. 16, 2020) .............. 13

*In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*,
  405 F. Supp. 3d 612 (D.N.J. 2019) ..................................................................... 15

*In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*,
  No. MDL No: 2785, 2018 U.S. Dist. LEXIS 98987 (D. Kan. June 13, 2018) ........................ 13

*Kaplan v. S.A.C. Cap. Advisors, L.P.*,
  No. 12-cv-9350, 2015 WL 5730101 (S.D.N.Y. Sept. 10, 2015) ............................................. 15

*Micro Motion, Inc. v. Kane Steel Co.*,
  894 F.2d 1318 (Fed. Cir. 1990) ......................................................................... 15

*Morocho v. Stars Jewelry by The A Jeweler Corp.*,
  345 F.R.D. 292 (S.D.N.Y. 2024) ....................................................................... 11

*Music Grp. Macao Commercial Offshore Ltd. v. Does*,
  82 F. Supp. 3d 979 (N.D. Cal. 2015) .................................................................... 7

*Nantworks, LLC v. Niantic, Inc.*,
  No. 20-cv-06262-LB, 2022 WL 1500011 (N.D. Cal. May 12, 2022) ..................................... 15

*Optionality Consulting Pte Ltd. v. Edge Tech. Grp. LLC*,
  No. 18-CV-5393 (ALC) (KHP), 2022 U.S. Dist. LEXIS 100198
  (S.D.N.Y. June 3, 2022)...................................................................................... 11

*Pegoraro v. Marrero*,
  281 F.R.D. 122 (S.D.N.Y. 2011) ....................................................................... 12

iv

*Price Waterhouse LLP v. First Am. Corp.*,
   182 F.R.D. 56 (S.D.N.Y. 1998) ............................................................................... 9

*Sec. & Exch. Comm'n v. Archer*,
   No. 16 Civ. 3505, 2018 WL 3424449 (S.D.N.Y. July 2, 2018) .................................. 5

*Semtek Int'l, Inc. v. Merkuriy Ltd.*, Misc.
   No. 3607 DRH, 1996 U.S. Dist. LEXIS 22444 (N.D.N.Y. May 1, 1996) ................................. 6

*Starr, Indem. & Liab. Co. v. Arch Specialty Ins. Co.*,
   No. 25 cv 5129 (PKC), 2026 U.S. Dist. LEXIS 33734 (S.D.N.Y. Feb. 17, 2026)............. 11, 12

*The Marshall Project, Inc. v. City of Cleveland*,
   No. 24-MC-309, 2024 U.S. Dist. LEXIS 196832 (S.D.N.Y. Oct. 28, 2024) .................... passim

*United States v. RW Prof'l Leasing Servs. Corp.*,
   228 F.R.D. 158 (E.D.N.Y. 2005) ............................................................................ 12

## Rules

Fed. R. Civ. P. 34 ............................................................................................ passim
Fed. R. Civ. P. 45 ............................................................................................ passim
Fed. R. Civ. P. 26 ................................................................................................... 5
S.D.N.Y. Local Rule 26.3 .................................................................................. 11, 12

v

## I.      Introduction

Schneider's Subpoena to Testify at a Deposition in a Civil Action ("Subpoena") should be quashed because it does not comply with the Federal Rule of Civil Procedure 45(c). Specifically, the Subpoena demands Fortress produce in Texas witnesses who reside and work in New York. New York is not within 100 miles of Texas, and these witnesses do not regularly transact business anywhere within 100 miles of Texas. Indeed, New York is more than 1,500 miles away from Texas. This defect is fatal to Schneider's Subpoena.

The Subpoena must also be quashed because the requests are overbroad and unbounded.[1] Schneider's document requests and deposition topics lack the requisite particularity and instead encompass material having no relevance to the underlying dispute. Almost all of the document requests seek "all documents," which this Court has found to be presumptively improper. The Subpoena also lacks any temporal restrictions and utilizes overbroad definitions and instructions that render it virtually unlimited in scope. Even Schneider's definitions of "documents," "communications," and "concerning" are problematic under this Court's local rules and, to the extent they were intended to include emails, violate the ESI Order in the underlying litigation.

Requiring non-party Fortress to search for and produce documents, and to prepare a witness to testify, related to such overbroad and ill-defined document requests and deposition topics would subject Fortress to undue burden and violate Rule 45. The Subpoena should be quashed in its entirety.

---

[1] The Court need not address any of these additional grounds to grant Fortress's motion. By having to reissue a new subpoena for compliance in New York City, Schneider could address those defects and narrow the Subpoena to an appropriate scope. Otherwise, these additional grounds, too, require that the Subpoena be quashed.

## II.    Factual Background

Headquartered in New York, Fortress Investment Group LLC ("Fortress") is an SEC-registered investment advisor managing assets on behalf of approximately 2,000 institutional clients and private investors worldwide across a variety of investment strategies. Declaration of James Palmer ("Palmer Decl."), ¶ 3. These include credit and real estate, private equity, and permanent capital. Palmer Decl., ¶ 3. Fortress is privately held, and the underlying investors in the private funds, managed accounts, and other structured products managed by Fortress are typically institutional and high net worth investors. Palmer Decl., ¶ 3.

Investment funds managed by Fortress affiliates have indirectly invested in hundreds of private companies, including Data PowerWorks LLC ("DPW"). Palmer Decl., ¶ 4. On December 31, 2024, DPW purchased assets from Vertiv, a leader in power management systems for digital infrastructure. DPW is directly owned by CFIP2 PW Holdings, LLC ("CFIP2"), which in turn is indirectly owned by investment funds managed by Fortress affiliates. Palmer Decl., ¶ 4. Shortly after DPW was formed, DPW hired  Max Ciccarelli as CEO. Palmer Decl., ¶ 5. Mr. Ciccarelli continues to run DPW. Palmer Decl., ¶ 5.

In March 2025, DPW sued Schneider Electric SE and Schneider Electric USA, Inc. (collectively, "Schneider") for patent infringement in the Eastern District of Texas (Case No. 2:25-cv-300-JRG) (the "Texas Litigation"). On March 23, 2026, Schneider served the Subpoena on Fortress. Ex. 1.[2] In it, Schneider demands that Fortress make available one or more corporate designees to testify as to eleven deposition topics and, further, directs Fortress to bring to the deposition documents responsive to twenty-two document requests. The Subpoena specifies an

---

[2] All cited exhibits are attached to the accompanying declaration of Jacob Zambrzycki.

address in Plano, Texas—more than 1,500 miles away from Fortress's New York headquarters—as the place for the deposition to occur and the documents to be produced.

Fortress and Schneider met several times to discuss the Subpoena. During the first meeting, Fortress informed Schneider that Fortress is headquartered in New York and no individual with relevant information resides or works within the 100-mile geographical limit set forth in Rule 45. In other words, Schneider knew after that first meeting that none of Fortress's potential witnesses are in or near Texas. Fortress therefore asked Schneider to re-issue the Subpoena for compliance in New York City, where Fortress is headquartered and where the relevant witnesses reside. Schneider refused.

Schneider's apparent reason for not reissuing the Subpoena to comply with Rule 45 is the mistaken belief that location for compliance is related to the Fortress entity rather than relevant witnesses. Specifically, Schneider explained that "Fortress regularly transacts business at the Dallas location listed in the subpoena, and it's also my understanding, on information and belief, that the persons with knowledge aren't in NYC anyway." Ex. 2. When asked about this statement, Schneider claimed that some of Fortress's employees might also be on the West Coast, although none were named. In the end, Schneider has maintained that, because Fortress has an office in Dallas and some of Fortress's employees are in locations other than New York, Schneider can properly force Fortress to produce its corporate witness(es) and documents at a deposition in Plano, Texas, even if this is not where Fortress's headquarters is located, and not where any witness lives, works, or regularly transacts business.

The parties also discussed the scope of the Subpoena itself. Although Fortress initially believed that the discussions were helpful and that Schneider would willingly narrow its facially overbroad requests, that did not turn out to be the case. Schneider reverted to demanding *all*

3

documents requested in the Subpoena with no limitations, stating "[y]ou have correctly identified some of the types of documents we are interested in, but that is not an exhaustive list, and for that I would refer you back to the subpoena." Ex. 2. In the end, despite Fortress's good faith efforts, it has become clear that Schneider is demanding documents and corporate testimony of unreasonable scope and in a location beyond the proper limits on subpoenas. Fortress was left with no choice but to move to quash.

## III.    Legal Standard

On a timely motion to quash, "the court for the district where compliance is required **must** quash or modify a subpoena that … requires a person to comply beyond the geographical limits specified in Rule 45(c)." Fed. R. Civ. P. 45(d)(3)(A)(ii) (emphasis added). Courts in the Second Circuit hold that "the court for the district where compliance is required" is based on "the residence of the non-party," **not** on the "location stated in the subpoena." *See The Marshall Project, Inc. v. City of Cleveland*, No. 24-MC-309, 2024 U.S. Dist. LEXIS 196832, at *6 (S.D.N.Y. Oct. 28, 2024) (collecting cases and concluding that this Court had jurisdiction over a motion to quash a subpoena issued out of the Northern District of Ohio to a company headquartered in New York City and listing the place of compliance as being in the Northern District of Ohio); *cf. Greater Chautauqua Fed. Credit Union v. Quattrone*, No. 22-CV-2753, 2024 U.S. Dist. LEXIS 2230, at *3-4 (S.D.N.Y. Jan. 3, 2024) (holding that the Southern District did not have the power to quash a subpoena directed to a non-party located within the Northern District). "To hold otherwise would vitiate the protections that Rule 45 affords subpoenaed non-parties, requiring them to litigate in distan[t] locations." *The Marshall Project*, 2024 U.S. Dist. LEXIS 196832, at *6.

Federal Rule of Civil Procedure 45(c) places geographical limits on subpoenas, stating that "[a] subpoena may command a person to attend a … deposition only … within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P.

4

45(c)(1)(A). Likewise, Rule 45(c) requires that "[a] subpoena may command … production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A). Furthermore, Second Circuit courts consistently hold that, "under Rule 45, the party issuing a subpoena to a non-party entity can require compliance only in the district in which the entity is headquartered or at a place within 100 miles of the entity's headquarters." *The Marshall Project*, 2024 U.S. Dist. LEXIS 196832, at **7-8.

The "court for the district where compliance is required **must**" also "quash or modify a subpoena that … subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv) (emphasis added). Under Federal Rule of Civil Procedure 26(b)(1), a party may obtain discovery "that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Because discovery must be both relevant and proportional, the right to discovery, even plainly relevant discovery, is not limitless. *See* Fed. R. Civ. P. 26(b)(1). Furthermore, when evaluating the propriety of a subpoena, courts must consider the burden the subpoena imposes on non-parties. "Determining undue burden requires a court to balance relevance, a party's need for the [information], whether the [information is] available from other sources, the particularity with which the [information is] described, and costs." *Sec. & Exch. Comm'n v. Archer*, No. 16 Civ. 3505, 2018 WL 3424449, at *1 (S.D.N.Y. July 2, 2018). "[W]ithin this Circuit, courts have held nonparty status to be a significant factor in determining whether discovery is unduly burdensome." *In re 650 Fifth Ave. & Related Props.*, No. 08 Civ. 10934, 2013 WL 12335763, at *2 (S.D.N.Y. Aug. 29, 2013).

A subpoena that is "overbroad on its face" may be quashed in its entirety. *Semtek Int'l, Inc. v. Merkuriy Ltd.*, Misc. No. 3607 DRH, 1996 U.S. Dist. LEXIS 22444, at **8-9 (N.D.N.Y. May

5

1, 1996); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 51 (S.D.N.Y. 1996) (quashing subpoena in its entirety where "virtually half of the twenty-two requests for documents" in the subpoena were found to be "vague, inexplicit, and overbroad"); *cf. Blackrock Allocation Target Shares v. Wells Fargo Bank*, No. 14-cv-09371 (KPF)(SN), 2017 U.S. Dist. LEXIS 223388, at **16-17 (S.D.N.Y. Mar. 2, 2017) (denying motion to compel compliance with subpoenas that were found to be "unduly broad, vague, and burdensome"); *In re Biovail Corp. Secs. Litig.*, No. 03-cv-8917 (RO), 2007 U.S. Dist. LEXIS 91127, at **74-75 (S.D.N.Y. Nov. 30, 2007) (denying motion to compel compliance with subpoenas that were "unlimited in time" and found to seek "virtually limitless financial and other information).

## IV.    Argument

Schneider's Subpoena is invalid on its face for failing to comply with the geographical limitations of Rule 45(c) and must be quashed. There is no need for the Court to address the scope of the Subpoena. On the contrary, requiring Schneider to reissue its subpoena with the correct place of compliance would also allow Schneider the opportunity to narrow the scope of its overbroad document requests and deposition topics. However, if the Court were to review the scope of the Subpoena, the Court should quash it under Rule 45(d)(3) for otherwise subjecting non-party Fortress to undue burden.

### A.    This Court Has Jurisdiction to Quash Schneider's Subpoena

Rule 45 requires that a "timely motion to quash" a subpoena must be decided in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(3)(A). In the Second Circuit, "the district where compliance is required" corresponds to "the residence of the [subpoenaed] non-party," **not** the place of compliance "stated in the subpoena." *The Marshall Project*, 2024 U.S. Dist. LEXIS 196832, at *6. "To hold otherwise would vitiate the protections that Rule 45 affords subpoenaed non-parties, requiring them to litigate in distan[t] locations." *Id.*

6

Fortress is headquartered in this District, at 1345 Avenue of the Americas in New York City. Palmer Decl., ¶ 2. The Fortress employee(s) who could potentially serve as the corporate designee(s) for the deposition topics listed in the Subpoena reside and are employed in or around this District, and would be willing to appear for deposition there. Palmer Decl., ¶ 7. The employees who would be responsible for searching for and producing documents potentially responsive to Schneider's subpoena are likewise Fortress employees who reside and are employed in or around this District. Palmer Decl., ¶ 7. As such, this District is the place of compliance for the Subpoena and this Court "has jurisdiction to decide" Fortress's motion and to quash Schneider's Subpoena. *See The Marshall Project*, 2024 U.S. Dist. LEXIS 196832, at \*6; *Greater Chautauqua*, 2024 U.S. Dist. LEXIS 2230, at \*3-4; *Dellaportas v. Shahin*, No. 24-CV-793 (VM) (VF), 2025 U.S. Dist. LEXIS 234292, at \*4 (S.D.N.Y. Dec. 2, 2025) (finding that a motion to compel should be heard in the district where the "employees who would be responsible for searching and producing information responsive to Plaintiff's subpoena are"); *Hi.Q, Inc. v. Zeetogroup, LLC*, No. 22-cv-1440-LL-MDD, 2022 U.S. Dist. LEXIS 215133, at \*20-21 (S.D. Cal. Nov. 29, 2022) (finding that a motion to compel was properly filed in the district where the deponent resided and where the non-party's principal place of business was located); *Europlay Capital Advisors, LLC v. Does*, 323 F.R.D. 628, 629 (C.D. Cal. 2018) ("[D]espite Google having an office in Venice, the proper district to hear a motion to compel is where Google is headquartered."); *Music Grp. Macao Commercial Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 982, 984 (N.D. Cal. 2015) (finding "no question" that the proper district to hear a motion to compel was where Twitter was headquartered).

**B.**     **Schneider's Subpoena Must be Quashed because It Fails to Comply with Rule 45(c)'s Geographical Limitations by Requiring Compliance More Than 1,500 Miles Away**

Schneider's Subpoena must be quashed because it demands Fortress to produce a witness in Plano, Texas—more than 1,500 miles away from the location of Fortress's New York headquarters and its potential witnesses.

The plain language of Rule 45 requires a court to quash or modify a subpoena that requires compliance more than 100 miles from where a person resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45(d)(3)(a)(ii). Courts routinely quash subpoenas that would require an individual or corporate representative to travel more than 100 miles to appear for a deposition or produce documents at a location more than 100 miles away. *See Hanwha Q Cells USA Corp. v. FCX Solar, LLC*, No. 3:22-CV-00241-LRH-CLB, 2022 U.S. Dist. LEXIS 125554, at *4 (D. Nev. July 15, 2022) (quashing deposition subpoena where, even though the subpoenaed entity was incorporated in Nevada, "none of the employees who [had] knowledge of the topics designation in the subpoena reside[d] or work[ed] in Nevada. Rather, these employees reside[d] in California and Arizona, well over 100-miles from the designated place of the deposition."); *Hermitage Global Partners L.P. v. Prevezon Holdings Ltd*., No. 14-mc-00318 (TPG), 2015 U.S. Dist. LEXIS 20080, at *14 (S.D.N.Y. Feb. 19, 2015) ("court must quash a subpoena where a nonparty organization does not employ anyone who is suitable to serve as a Rule 30(b)(6) representative within 100 miles," internal citations omitted).

For example, in *Highmore Fin. Co. I LLC v. Greig Cos*., this Court granted a motion to quash subpoenas requiring a non-party entity to appear and produce documents in New York City. No. 21-CV-11021 (AT) (JW), 2023 U.S. Dist. LEXIS 97606, at *2 (S.D.N.Y. June 5, 2023). The entity had an office in New York City but was headquartered in Maryland and represented that all the employees who may have had knowledge of the matters for which discovery was sought

resided and were employed in or around Maryland. *Id.* at *3. The Court found that because "no individual with relevant information reside[d] or work[ed] within the 100-mile geographical limit set forth in Rule 45, the Court agree[d] that [the entity] ha[d] met its burden to show the [s]ubpoenas must be modified or quashed." *Id.* at *3-4.

Similar to the subpoenaed entity in *Highmore*, while Fortress has an office within 100 miles of the Texas address listed on the subpoena, Fortress is headquartered here in New York City and has no employees with knowledge relevant to the Subpoena within 100 miles of Plano, Texas. Palmer Decl., ¶ 2, 8. Indeed, Fortress has identified its potential corporate designee(s) for the deposition, and they reside, are employed, and regularly conduct business in person in or around New York and not Texas. Palmer Decl., ¶ 7. Likewise, the employee(s) needed to search for and produce the documents requested by the Subpoena reside, work, and regularly conduct business in or around New York, not Texas. Palmer Decl., ¶ 7.

The fact that Fortress has an office in Dallas, Texas is irrelevant. As this Court has recognized, Rule 45 "is specific to the actual individuals being deposed rather than the business as a whole." *Highmore*, 2023 U.S. Dist. LEXIS 97606, at *3-4 (quashing subpoena that required compliance in New York City even where the subpoenaed entity had an office where it regularly conducted business in New York City); *Great Lakes Reinsurance (UK) SE v. Herzig*, No. 16 Civ. 9848 (PGG), 2023 U.S. Dist. LEXIS 116721, at *7-8 (S.D.N.Y. July 7, 2023) ("[T]he inquiry under Rule 45 is directed at where the 'person' whose attendance is commanded 'resides, is employed, or regularly transacts business in person', not where that person's employer transacts business," (citation omitted)); *Price Waterhouse LLP v. First Am. Corp.*, 182 F.R.D. 56, 63 (S.D.N.Y. 1998) (stating the 100-mile limitation applies to the actual "flesh-and-blood human beings," "not the legal entity for whom those human beings work"); *see also The Marshall Project*,

2024 U.S. Dist. LEXIS 196832, at **7-8 ("under Rule 45, the party issuing a subpoena to a non-party entity can require compliance only in the district in which the entity is headquartered or at a place within 100 miles of the entity's headquarters").

Because the Subpoena commands Fortress's corporate designee(s) to appear for a deposition and produce documents in Plano, Texas (more than 1,500 miles—never mind 100—from where they reside, are employed, and regularly conduct business in New York), it is invalid on its face and "must" be quashed. Fed. R. Civ. P. 45(d)(3)(A)(ii); *Highmore*, 2023 U.S. Dist. LEXIS 97606, at *4-5 (finding the Rule 45(c) violation "determinative" and therefore quashing the subpoenas without addressing arguments that the subpoenas were also unduly burdensome); *Hermitage*, 2015 U.S. Dist. LEXIS 20080, at *14-15 (holding "that the … subpoena does not comply with Rule 45(c)" and that "[t]his alone is enough to quash the … subpoena").

### C.   The Subpoena Is Facially Overbroad and Would Render a Response by Fortress Unduly Burdensome in Violation of Rule 45(d)

Schneider's document requests and deposition topics are improper for a subpoena to a non-party. This constitutes additional grounds for quashing the Subpoena.

Almost all of Schneider's document requests in the Subpoena expressly seek "all documents" on expansive topics. *See* Ex. 1, Attachment B, Requests 1-7, 9-16, and 18-20.[3] Schneider defines "documents" to include "Communications," which are in turn defined to mean

---

[3] Although one request technically seeks "[a]ny" documents (Request 17), Schneider has defined "any" to mean "any and all." Ex. 1, Attachment A, ¶ 16. And two of the remaining requests effectively ask for all documents given that they seek "[d]ocuments" and/or "things," without limitation, regarding "**any** allegation, notification, and/or charge of infringement or infringement or offer to license that includes the Asserted Patents or any Related Patents" (Request 8, emphasis added) and "**any** monetary interest, ownership interest, and/or control Fortress has in the outcome of this litigation, DPW, CFIP2, Vertiv, and/or the Asserted Patents" (Request 21, emphasis added). The sole document request that asks for "[d]ocuments sufficient to identify" the requested information is nevertheless directed at "**any** agreements relating to the Asserted Patents," without regard for such agreements' relevance to the underlying dispute. (Request 22, emphasis added).

"any transmission, exchange or transfer of information by any means, whether written or oral, and including letters, numbers, images, symbols, data, photographs, and sounds." Ex. 1, Attachment A, ¶ 12.[4] This Court has repeatedly found that requests for "all documents" are overbroad and unduly burdensome. *See, e.g.*, *Hedgeye Risk Mgmt., LLC v. Dale*, No. 21-CV-3687 (ALC) (RWL), 2023 U.S. Dist. LEXIS 116323, at *4 (S.D.N.Y. July 5, 2023) ("Each document request starts with 'All Documents' or 'All Communications,' which often is a red flag for overbreadth and undue burden."); *Morocho v. Stars Jewelry by The A Jeweler Corp.*, 345 F.R.D. 292, 294 (S.D.N.Y. 2024) (document requests seeking "all documents" relating to a given subject were "plainly overbroad and impermissible"); *Optionality Consulting Pte Ltd. v. Edge Tech. Grp. LLC*, No. 18-CV-5393 (ALC) (KHP), 2022 U.S. Dist. LEXIS 100198, at *10, *12 (S.D.N.Y. June 3, 2022) (finding requests for "all documents" overbroad and "presumptively improper"). As such, the Subpoena's document requests, nearly all of which demand the production of "all documents" related to broad categories of information are "plainly overbroad and impermissible" and "presumptively improper." *Morocho*, 345 F.R.D. at 294; *Optionality Consulting*, at *10, *12.[5]

---

[4] This definition violates S.D.N.Y. Local Rule 26.3(1), which more narrowly defines "communications" to mean "the transmittal of information (in the form of facts, ideas, inquiries, or otherwise"). *See Starr*, *Indem. & Liab. Co. v. Arch Specialty Ins. Co.*, No. 25 cv 5129 (PKC), 2026 U.S. Dist. LEXIS 33734, at *5 n.1 (S.D.N.Y. Feb. 17, 2026) ("The use of [a] bespoke broader definition[] of 'Communications' … [is a] violation[] of Local Rule 26.3 and lead[s] directly to confusion.").

[5] To the extent Schneider asserts that its requests also encompass emails, Schneider has not properly sought discovery of Fortress's emails in accordance with the ESI Order to which Schneider agreed in the Texas Litigation. The ESI Order, stipulated and entered into by the parties in November 2025, includes an explicit process for email discovery and expressly makes clear that the process applies to discovery sought via subpoena. Specifically, the ESI Order states: "General ESI production requests under **Federal Rules of Civil Procedure** 34 and **45** … **shall not include e-mail or other forms of electronic correspondence** (collectively, "e-mail"). To obtain e-mail, **parties must propound specific e-mail production requests**." Ex. 3, ¶ 6 (emphasis added). Schneider has yet to propound any email production requests on Fortress. There is no reason that Fortress should receive less protection from discovery than the parties to the underlying litigation
*(continued on next page)*

11

Additionally, almost all of the requests seek documents "concerning" or "relating to" extensive categories of information. *See* Ex. 1, Attachment B (requests 1-9, 12-16, 18-21). Schneider defines the term "concerning" to mean essentially any document having **anything** to do with the respective subject matter, even if only "indirectly." *See* Ex. 1, Attachment A, ¶ 11 (defining "concerning" to mean "identifying, describing, discussing, concerning, assessing, stating, reflecting, constituting, containing, embodying, tending to support or refute, or referring directly or indirectly to, in any way, the particular subject matter identified. This includes any Document that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, refers directly or indirectly to, or is any way relevant to the particular subject matter identified"). This definition is overbroad, vague, and impermissibly broadens the definition of "concerning" provided in S.D.N.Y. Local Rule 26.3 in a way that raises questions as to the scope of that term. *See also Starr*, 2026 U.S. Dist. LEXIS 33734, at *5 n.1 ("The use of [a] bespoke broader definition[] of … 'Concerning' [is a] violation[] of Local Rule 26.3 and lead[s] directly to confusion.").[6]

To make matters worse, all of the twenty-two document requests and eleven deposition topics in the Subpoena are unlimited in time. *See, e.g.*, *Blackrock Allocation Target Shares v. Wells Fargo Bank*, No. 14-CV-09371 (KPF)(SN), 2017 U.S. Dist. LEXIS 223388, at *17 (S.D.N.Y. Mar. 2, 2017); *Pegoraro v. Marrero*, 281 F.R.D. 122, 134 (S.D.N.Y. 2011) (no response necessary to request lacking time limit); *United States v. RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. 158, 164 (E.D.N.Y. 2005) (requests with no restriction on time period placed "unreasonable and oppressive"

---

themselves. *See Kelley v. Enhanced Recovery Co.*, LLC, No. 15-6527 (CCC), 2016 U.S. Dist. LEXIS 140147, at *6-7 (D.N.J. Oct. 7, 2016) (a non-party to an action "is afforded greater protection from discovery than a normal party").

[6] *See* S.D.N.Y. Local Rule 26.3(c)(7) ("The term 'concerning' means relating to, referring to, describing, evidencing, or constituting.").

burden on non-party). This is especially problematic as Schneider does not only demand that Fortress search for and produce all existing documents, but also impermissibly demands that Fortress identify and describe any documents potentially responsive to these requests that may have existed at any point in time. Ex. 1, Amendment A, ¶ 22; *cf.* Fed. R. Civ. P. 34 ("A party may serve on any other party a request…to produce…[e.g., documents] in the responding party's possession, custody, or control…").

Compounding the Subpoena's overbreadth, Schneider defines "Fortress" and the various entities regarding which it seeks information, including "Schneider," "DPW," "CFIP2," and "Vertiv," in overbroad terms. Ex. 1, Attachment A, ¶¶ 1-4. For example, Schneider defined "Fortress" to include not only Fortress Investment Group, LLC, but also all:

> predecessors, successors, divisions, subsidiaries, parent entities, domestic and foreign affiliates and related companies, divisions, departments, organizational operating units, and each entity owned or controlled by them, directly or indirectly, in whole or in part, and all present or former officers, directors, executives, employees, principals, partners, agents, legal representatives, consultants, and all other individuals or entities acting on their behalf.

*Id.* Such definitions further "unreasonably expand the breadth" of the Subpoena and would require Fortress "to make representations on behalf of parties over which they have no control." *See Bruce Kirby, Inc. v. Laserperformance Europe Ltd.*, No. 3:13-cv-297 (JAM), 2022 U.S. Dist. LEXIS 246044, at *11-13 (D. Conn. Apr. 4, 2022); *In re in re T-Systems Scheiz AG*, No. 1:20-mc-308-GHW, 2020 U.S. Dist. LEXIS 236643, at *2 (S.D.N.Y. Dec. 16, 2020) (definition of respondent entity as inclusive of "any of its subsidiaries or affiliates, agents, representatives, or other person representing it" was overbroad, as it would lead requests to encompass documents not only in respondent's custody or control but in that of other entities"); *In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. MDL No: 2785, 2018 U.S. Dist. LEXIS 98987, at *23 (D. Kan. June 13, 2018) (overbroad entity definitions not only encompass persons and

13

entities that potentially have no relevance to the underlying proceeding but also make it impossible

to "identify all individuals and entities within the definition[s'] scope" and therefore respond to

the subpoena).

Finally, two subsets of Schneider's deposition topics and corresponding requests for

documents are targeted at categories of documents and information that are altogether irrelevant

to the underlying dispute. Specifically, the first subset—Requests 7, 8, 12, 14, 16, 19, and 20, and

Topics 5, 6, and 9—seek various documents and information related to negotiations, attempts, and

offers to license, *inter alia*, the Asserted Patents (Requests 7, 8, 14, 19, and 20, Topics 6 and 9)

and any valuation of, *inter alia*, the Asserted Patents and this litigation (Requests 12 and 16, Topic

5). Presumably, Schneider will argue that such documents and information are somehow relevant

to damages in the underlying litigation. But production of negotiation discussions is "the

exception, not the rule," and is granted in only "very limited circumstances." *Ceats, Inc. v. Cont'l

Airlines, Inc.*, No. 6:10-cv-120, 2012 WL 12903706, at *2 (E.D. Tex. Jan. 5, 2012); *see Fleet

Connect Sols. LLC v. Waste Connections US, Inc.*, No. 2:21-cv-00365-JRG, 2022 WL 2805132,

at *1-2 (E.D. Tex. June 29, 2022) (denying motion to compel negotiation documents underlying

settlement and license agreements).[7]

---

[7] Several other requests and topics seek information regarding products not at issue in, and therefore irrelevant to, the underlying litigation. *See*, *e.g.*, Request Nos. 2 ("All documents and things concerning any apparatus, device, method or system that allegedly practices **any claim** of the Asserted Patents"); Topic 8 (seeking testimony of similar scope); Request Nos. 6-8 and Deposition Topic 6 (seeking "all documents" and testimony related to infringement analyses and accusations, as well as licensing evaluations and offers, **not limited** to the parties and products in the litigation). Similarly, multiple others seek information regarding patents, "assets," and "technology" that are not in dispute. *See* Request No. 9 (seeking "all" documents "concerning" the acquisition of "**assets**" from Vertiv, including "**any**" patents); Request No. 12 (seeking "all" documents "concerning" valuation of "**any assets**" that originated from Vertiv *or* were transferred to DPW, including "**any**" patents); Request No. 13 ("all" documents "concerning" revenues "for **any assets**," including "**any patents**" that originated with Vertiv or that were transferred to DPW); Request No. 14 ("all" documents "concerning" licensing or enforcement strategy or policy related
*(continued on next page)*

14

The second subset—Requests 17 and 21—seek documents, *inter alia*, regarding Fortress's purported financial interests or other interests in, or control over, "this litigation," "CFIP2, Vertiv, and/or DPW." Any such documents have no relevance to the underlying litigation. For example, such documents are "irrelevant to credibility" and do "not assist the factfinder in determining whether or not the witness is telling the truth." *Benitez v. Lopez*, No. 17-cv-3827, 2019 WL 1578167, at *1 (E.D.N.Y. Mar. 14, 2019); *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 405 F. Supp. 3d 612, 615 (D.N.J. 2019) (collecting cases); *cf. Kaplan v. S.A.C. Cap. Advisors, L.P.*, No. 12-cv-9350, 2015 WL 5730101, at *5 (S.D.N.Y. Sept. 10, 2015) (denying defendants' request for production of documents relating to plaintiffs' litigation funding on ground that defendants failed to "show that the requested documents are relevant to any party's claim or defense"); *Nantworks, LLC v. Niantic, Inc.*, No. 20-cv-06262-LB, 2022 WL 1500011, at *2 (N.D. Cal. May 12, 2022) (noting that fee and litigation funding agreements are generally discoverable only when there is a "specific articulated reason to suspect bias or conflicts of interest.").[8]

---

to "**any assets**"); Request No. 15 "all" documents "concerning" the validity or enforceability of the "**any**" patents transferred from Vertiv to DPW, CFIP, and/or Fortress; Deposition Topic 5 (seeking valuation of **any** "patents" acquired by DPW from Vertiv); Deposition Topic 9 (seeking licensing agreements related to "**similar technology**"). Request No. 18 seeks information regarding both products and technology not at issue in the litigation. *See* Request No. 18 ("all" documents "concerning" market demand and the like related to "**any potential or actual products** that incorporate the alleged inventions of the Asserted Patents or **similar technology**") (emphasis added).

[8] It is Fortress's understanding from the pleadings that there is no defense being asserted in the case to which these requests and topics might be relevant, and Schneider certainly has not articulated one. As such, Requests 7, 8, 12, 14, 16, 17, and 19-21, topics 5, 6, and 9, represent nothing more than an impermissible fishing expedition. *See, e.g.*, *Henry v. Morgan's Hotel Grp., Inc.,* No. 15-CV-1789 (ER) (JLC), 2016 WL 303114, at *2 (S.D.N.Y. Jan. 25, 2016) (collecting cases); *Gropper v. David Ellis Real Estate, L.P.*, No. 13 Civ. 2068 (ALC) (JCF), 2014 WL 518234, at *4 (S.D.N.Y. Feb. 10, 2014) (collecting cases); *see also Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1326 (Fed. Cir. 1990) ("requested information is not relevant … if the inquiry is based on the party's mere suspicion or speculation").

15

In sum, the Subpoena is "overbroad on its face" and should be quashed in its entirety.

## V.    Conclusion

Fortress respectfully requests that the Court quash Schneider's Subpoena.


Dated: April 17, 2026

Respectfully submitted,

s/ *Jacob Z. Zambrzycki*
Jacob Z. Zambrzycki (#4786240)
Kathryn G. Cole (*pro hac vice* application
forthcoming)
J. Mark Wilson (*pro hac vice* application
forthcoming)
MOORE & VAN ALLEN PLLC
Bank of America Corporate Center
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
(704) 331-1000
(704) 331-1159 (facsimile)
E-mail: jacobzambrzycki@mvalaw.com
E-mail: katecole@mvalaw.com
E-mail: markwilson@mvalaw.com

*Attorneys for Movant Fortress
Investment Group LLC*

16

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Movant Fortress Investment Group LLC, certifies

that this brief contains 5,143 words, which complies with the word limit of Local Rule 7.1(c).

Dated: April 17, 2026

By: s/ *Jacob Z. Zambrzycki*

17

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2026, I caused the foregoing document to be served upon

Respondents' counsel via overnight delivery as follows:

Melissa R. Smith
Tom Gorham
Gillam & Smith LLP
303 South Washington Avenue
Marshall, TX 75670

s/ *Jacob Z. Zambrzycki*
Jacob Z. Zambrzycki

18